Presented by:
JASON LEE SUTTON,
(AKA= "Jennifer Lee" SUTTON),
Pro se Plaintiff,
DOC NO. 730954
(see address in complaint)

HONORABLE JUDGE RICHARD A. JONES
HONORABLE JUDGE MARY A. THEILER

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

JASON LEE SUTTON,
(AKA= "Jennifer Lee" SUTTON)
Pro se Plaintiff,

    Vs.

MICHAEL HATHAWAY, et al.,
(THERESA L. COHN),
(defendants corrected name),
Defendants.

)  NO. 2:19-cv-01500-RAJ-MAT
)  _____
)
)  PLAINTIFF'S FIRST AMENDED
)  COMPLAINT FOR INJUNCTIVE,
)  MONETARY, & DECLARATORY
)  RELIEF. Pursuant to Title 42
)  U.S.C. § 1983.
)
)  *** JURY TRIAL DEMANDED ***
)  *** Federal Question ***
)  (Clerk's Action Required)

TO: Clerk of the Court; and
TO: Defense counsel of record.

### I.  PRELIMINARY STATEMENT

    COMES NOW Plaintiff, JASON LEE SUTTON (a/k/a "Jennifer
Lee" SUTTON, "J.Lee" for short), who is a transgender woman.

    Plaintiff has been diagnosed with "gender dysphoria,"
and she is currently in the custody of the Washington State
Department of Corrections (hereinafter WDOC). Ms. Sutton has
requested medically necessary care, including hormone therapy,
(numerous times), to treat her gender dysphoria, however the
WDOC has delayed, and continues to delay these requests.

    As a direct result of her continued denial of care, Ms.
Sutton has been, and continues to endure mental anguish.

    Due to WDOC delaying medically necessary treatment for
"gender dysphoria," Ms. Sutton continues to be at risk of self-
harm (i.e., auto-castration). WDOC, and defendants are now on
placed on judicial notice.

FIRST AMENDED COMPLAINT - Pg. 01.

This civil action, is also brought forth for the below stated reasons. WDOC, and defendants have been placed on notice concerning the substantial risk(s) of harm associated with Ms. Sutton. However, once placed on notice, defendants have taken little to no action(s) to attempt at preventing any further harm directed towards Plaintiff. Due to this, injunctive relief, with a substantial monetary award for Plaintiff is warranted.

Ms. Sutton, brings this action pursuant to Title 42 U.S.C. § 1983, after fully exhausting her available administrative remedies, to seek redress for defendants deliberate indifference to her serious medical needs, which constitutes cruel & unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.  Along with a lack of adequate medical care, or medical treatment for "gender dysphoria," Plaintiff has been subjected to prison rape, after being directed to move into a cell with a known sex-offender, and violent x-gang-member.

Defendants, had prior knowledge relevant to prior acts or behaviors of inmate TIEGON KIMBLER (WDOC #387930), yet they both directed Plaintiff to move into a cell with KIMBLER, even though there existed prior allegations that KIMBLER had sexually assaulted another prisoner, who used to live in the same cell with KIMBLER.  Subjecting Plaintiff to be at risk of physical harm, while under custody/care of defendants, has caused this civil action to be filed.

Ms. Sutton, seeks damages, in injunctive relief, as well as a declaratory judgment, under Title 28 U.S.C. § 2201, & 2202.

FIRST AMENDED COMPLAINT - Pg. 02.

## II. JURISDICTION AND VENUE

2.01 This action arises under Title 42 U.S.C. § 1983.

2.02 This Court has subject matter jurisdiction under Title 28 U.S.C. § 1331, and 1343(a)(3).

2.03 This Court has personal jurisdiction over each and every Defendant, because they are residents of Washington State, who are employed in Washington, and acting under color of State law, during all relevant times.

2.04 Venue is proper, pursuant to Title 28 U.S.C. § 1391 (b)(2), because all Defendants are employed by WDOC, which is headquartered in Olympia, Washington.

## III. PARTIES CURRENTLY INVOLVED

3.01 Plaintiff: JASON LEE SUTTON (aka= "Jennifer Lee" SUTTON), ("J.Lee" for short) (DOC #730954), is a transgender woman with "gender dysphoria," and she has been in WDOC custody since April 25, 1995. Since that time, Ms. Sutton has been housed at multiple State prison facilities: Washington Corrections Center (WCC), also Washington State Penitentiary (WSP), the Clallam Bay Corrections Center (CBCC), also Washington State's Reformatory (MCC-WSR), along with Airway Heights Corrections Center (AHCC), and Monroe Corrections Center-Twin Rivers Unit, (MCC-TRU). Plaintiff, has been housed at some of these above prison facilities, more than once.

3.02 It has been well documented within WDOC, that Ms. Sutton is a vulnerable inmate, she has been subjected to prior incidents of prison rape, due to her feminine appearance, and actions. Defendants, have access to information concerning Ms. Sutton's past, while she has been under custody of WDOC, and this same information, can easily be accessed by defendants.

FIRST AMENDED COMPLAINT - Pg. 03.

3.03  It is alleged, that defendants were aware of Ms. Sutton's vulnerability to prison rape, yet they took little to no action in order to prevent Sutton from being raped by KIMBLER.

3.04  Defendant: MICHAEL HATHAWAY, was at all relevant times, the Correctional Programs Manager (CPM) of Twin Rivers Unit, at Monroe Corrections Complex (MCC-TRU).

3.05  Defendant Hathaway's duties & responsibilities at all relevant times herein, were to ensure the physical safety, and good health of all WDOC identified "transgender" inmates, (like Ms. Sutton), who were housed at MCC-TRU.

3.06  It is alleged, that defendant Hathaway failed in his duties as MCC-TRU-CPM, when he approved/directed Ms. Sutton to be housed with a previously known sex offender/rapist, inmate TIEGON KIMBLER - WDOC #387930), thereby causing Plaintiff to be subjected to prison rape, with its associated damages.

3.07  It is alleged, that due to defendant Hathaway's actions, Plaintiff was directed to be housed with KIMBLER, when it was previously known, that KIMBLER had sexually victimized a prior cellmate, and that a "Prison Rape Elimination Act," (PREA) complaint/report had been made concerning that incident.

3.08  It is also alleged, that defendant Hathaway was deliberately indifferent to Plaintiff's physical health & safety, by his personal choice in "ignoring" KIMBLER'S WDOC history, and thereby directing Plaintiff to be placed in harms-way, whereby Plaintiff was sexually assaulted by KIMBLER.

3.09  Defendant Hathaway, is therefore sued in his individual, and official capacities.

FIRST AMENDED COMPLAINT - Pg. 04.

3.10  **Defendant:** THERESA L. COHN, was at all relevant times herein, the Custody Unit Supervisor (CUS), of MCC-TRU-B Unit. However, currently defendant Cohn is employed as the acting Correctional Programs Manager (CPM), of MCC-W.S.R..

3.11  At all times relevant herein, defendant Cohn's employment duties (as the TRU - B Unit Manager), were to ensure the good health, and safety of all inmates housed in B Unit.

3.12  During the time that Plaintiff was directed to be housed with KIMBLER, defendant Cohn was the active B Unit Manager and was responsible for Plaintiff's security & safety.

3.13  It is alleged, that at all times relevant herein, defendant Cohn was responsible to ensure that "transgender" inmates (like Ms. Sutton), were not housed with other inmates, (who are known to be predatory, or violent in nature), or those inmates who have a known history of any "PREA" complaints filed against them.

3.14  It is alleged, that defendant Cohn "failed-to-protect" Plaintiff from prison rape, when previous to the move into KIMBLER'S cell, Cohn had prior knowledge of KIMBLER'S past prison behaviors, Cohn ignored the same, then directed Ms. Sutton to be housed with KIMBLER, who then sexually assaulted Sutton.

3.15  It is also alleged, that defendant Cohn was deliberately indifferent to Plaintiff's health & safety, due to all the above/below statement of facts.

3.16  Defendant Cohn is therefore sued in her individual, and official capacities.

3.17  Plaintiff, reserves the right to amend this complaint in order to add, or subtract parties, or witnesses.

FIRST AMENDED COMPLAINT - Pg. 05.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.01  Plaintiff, has exhausted what remedies were made available to her. See, grievance log i.d. NO. 19685908.

4.02  Plaintiff, has also made attempts to contact the "Ombudsman," and the office of "Crime Victim's Advocacy."

4.03  Relevant to this civil action, there has also been a PREA complaint filed, and an investigation conducted. See, "PREA Case NO. HQ 19-18855."

4.04  In support of Ms. Sutton's claims, she filed grievance log i.d. NO. 19686337.

4.05  According to MCC-TRU grievance coordinator, Ms. Blair, Plaintiff's complaint was not allowed to be processed because: "per pg. 24 of the grievance programs manual, from the standpoint of the grievance program, once a PREA complaint is presorted as PREA, the complaint/grievance is considered informally resolved." See, grievance log i.d. NO. 19685908. Also, grievance log i.d. NO. 19686337.

4.06  Due to all the above, Plaintiff has exhausted all remedies, which have been made available to Ms. Sutton.

4.07  To date, Plaintiff has not received a remedy to her ongoing complaint(s), and due to this, Plaintiff now comes before this honorable Court, seeking relief to violations of her constitutional rights, due to human rights abuses.

4.08  Plaintiff, asserts that she has no other way, to address to wrongs done to her.

///

///

FIRST AMENDED COMPLAINT - Pg. 06.

## V.  NARRATIVE FACTS

### Background on Gender Dysphoria

5.01  Gender dysphoria, formerly known as gender identity-disorder, is a medical condition, in which an individual's gender differs from the gender the individual was assigned at birth, resulting in clinically significant distress.

5.02  Gender dysphoria is a recognized condition in the American Psychiatric Association's Diagnostic, and Statistical Manual for Mental Disorders ("DSM-V"). Per the DSM-V, the diagnostic criteria for gender dysphoria are:

A.  A marked incongruence between one's experienced/expressed gender, and assigned gender, of at least six months' duration, as manifested by at least two of the following:

   01. A marked incongruence between one's experienced/expressed gender, and primary or secondary sex-characteristics (in young adolescents, the anticipated secondary sex characteristics).

   02. A strong desire to be rid of one's primary, and/or secondary sex characteristics, because of a marked incongruence with one's experienced/expressed gender, (in young adolescents, a desire to prevent the development of the anticipated secondary sex-characteristics).

   03. A strong desire for the primary, and/or secondary sex characteristics of the other gender.

   04. A strong desire to be of the other gender (or some alternative gender, different from one's assigned gender at birth).

   05. A strong desire to be treated as the other gender, (or some alternative gender, different from the gender assigned at birth).

   06. A strong conviction, that one has the typical feelings and reactions of the other gender (or some alternative gender, different from one's assigned gender).

B.  The condition is associated with clinically significant distress, or impairment in social, occupational, or other important areas of daily functioning.

FIRST AMENDED COMPLAINT - Pg. 07.

5.03 There is medical consensus, that gender dysphoria is a serious medical condition, and those who suffer from it, require adequate medical treatment.

5.04 The accepted standards within the medical community, for treatment of gender dysphoria, are the "Standards of Care," for the Health of Transsexual, Transgender, and Gender-Nonconforming People ("Standards of Care"), published by the World Professional Association of Transgender Health ("WPATH").

5.05 The Standards of Care, are the authoritative, and internationally accepted treatment standards for gender dysphoria, and are accepted, or endorsed by the American Psychiatric Association, the American Medical Association, the National Commission of Correctional Healthcare, the U.S. Department of Justice National Institute of Corrections, and Courts that have examined the issue.

5.06 The Standards of Care apply to individuals in custodial settings. Both in city/county jails, & State/Federal prisons. There exists no distinction to Plaintiff's knowledge.

5.07 Treatment for gender dysphoria includes social transition (dressing and presenting oneself in accordance with one's gender identity), hormone therapy (H.R.T.), and surgeries.

5.08 Appropriate treatment for the condition, must be individualized based on the particular medical needs of the patient. (Ms. Sutton's specific medical history is below).

5.09 The Standards of Care, make clear that psychotherapy (by itself), is not a substitute for social transition, hormone therapy, or surgeries, where such treatments are medically required. Defendants have only provided psychotherapy to Sutton.

FIRST AMENDED COMPLAINT - Pg. 08.

5.10   Persons who need to socially transition, or need to initiate hormone treatment during their incarceration, (if this is denied by State agents), they are at risk of severe adverse outcomes. These adverse outcomes include, but are not limited to, suicidality, auto-castration, numerous forms of self-harm, anxiety, sleep-deprivation, insomnia, depression, and many other negative health related symptoms.

5.11   Use of antidepressants, and other psychotropic medications, are medically inadequate to treat gender dysphoria, and this does not meet the prevailing Standards of Care.

### Ms. Sutton's Gender Dysphoria and Treatment History

5.12   Ms. Sutton, is a 44-year-old woman.

5.13   Ms. Sutton is transgender, and has gender dysphoria. Since her childhood, Ms. Sutton has experienced a divergence between the gender she was assigned at birth, and her female gender. Ms. Sutton, has privately identified as female since a young age, and began doing so publicly, after her incarceration.

5.14   Starting at approx. age 9-10, Ms. Sutton began to wear women's clothing (i.e., panties privately), and she kept this hidden from her family.

5.15   Ms. Sutton, did not publicly disclose these matters, (from the ages of 10-18), because she did not feel comfortable doing so, and during the years 1985-1994, Ms. Sutton was not aware of any transgender support groups, or medical officials who specialized in transgender issues.

///
///
FIRST AMENDED COMPLAINT - Pg. 09.

5.16   On or around July - September 1994, Ms. Sutton was arrested for numerous felony offenses, and was incarcerated in both King, and Pierce county detention centers (jails).

5.17   Ms. Sutton, eventually went to jury trial in her King county case, and she pled guilty in her Pierce county case.

5.18   Ms. Sutton, was found guilty in both county cases, and eventually she became incarcerated within the custody of the Washington State Department of Corrections (WDOC).

## Ms. Sutton's Initial Gender Dysphoria Diagnosis, and Lack of Treatment by WDOC

5.19   In January 2003, Ms. Sutton was seen by WDOC consulting mental health counselor (at CBCC), and she was diagnosed (by Mr. Paul Martin) with "gender identity disorder." (today, it is called "gender dysphoria").

5.20   It wasn't until May-June 2018, when Ms. Sutton was transferred to Monroe Corrections Complex-Twin Rivers Unit, (TRU), that she felt comfortable enough disclosing to WDOC prison officials, that she desired to be treated for gender-dysphoria, with "Hormone-Replacment-Therapy," (HRT), also known as estrogen medications, etc..

5.21   On or around January 2019, (after meeting with MCC-TRU doctor Mr. Art Davis, and preparing for the assessment), Ms. Sutton began evaluation/protocols for H.R.T. referral.

5.22   These meetings, are detailed in Mr. Davis's "Mental-Health-Progress-Notes."

5.23   From January - to date, Ms. Sutton has been repeatedly requesting H.R.T.. However, Ms. Sutton has not been granted permission to be proscribed estrogen, and she is

FIRST AMENDED COMPLAINT - Pg. 10.

patiently waiting for WDOC - "Care Review Committee" (CRC), to approve, and authorize the prescription for Ms. Sutton to take estrogen medications.

5.24   Since January 2019, Ms. Sutton has met with WDOC Doctor Art Davis at numerous follow-up sessions, in order to ensure that H.R.T. is what Sutton desires, and that there is a complete understanding of the risks involved in transition.

5.25   Since January 2019, Ms. Sutton has been very cooperative with Doctor Davis's assessments, and she was recently told by Davis, that his referral to the CRC Board, for the approval for her to be prescribed estrogen, was submitted to the CRC Board in August of 2019.

5.26   Since August 2019, the CRC Board has not made a decision regarding Sutton's gender dysphoria.

### Ms. Sutton's Lack of Treatment for Gender Dysphoria

5.27   In 2018, Sutton was transferred from CBCC - to - MCC-TRU, after she graduated from a long-term-program, entitled "Intensive Transition Program," (ITP).

5.28   As soon as Plaintiff arrived at MCC-TRU, she was intaked by a C-Unit Counselor (name unknown), during the orientation process.

5.29   During orientation with this counselor, Sutton felt comfortable disclosing her life's struggle with gender dysphoria, and she openly desired to be medically treated for the same.

5.30   As of the filing of this complaint, Defendants have not provided Ms. Sutton with hormone therapy.

FIRST AMENDED COMPLAINT - Pg. 11.

5.31   During the orientation process, Ms. Sutton was determined to be a "vulnerable person," and was categorized as "transgender," along with her WDOC confinement history updated, to reflect that she has been a "repeated" victim of sexual abuse during her incarceration.

5.32   Ms. Sutton, is listed as a PREA-Potential-Victim, within WDOC databases. She is also listed with a "low-risk" to reoffend if she is released from custody of WDOC.

5.33   Defendants have been placed on notice, regarding Ms. Sutton's desire for hormone therapy, as early as January of 2019, however as of the filing of this amended complaint, the ongoing requests for hormone therapy have been presented to the appropriate medical officials, yet no hormone therapy has been allowed, or provided to Ms. Sutton.

5.34   Plaintiff has exhausted the administrative remedies which were made available to her, by the filing of grievances, submitting numerous medical kites (request slips), and by the repeated meetings with WDOC Doctor Art Davis (above).

5.35   After Ms. Sutton repeatedly requested treatment for her gender dysphoria, WDOC & Defendants have taken little to no action in providing her adequate medical care for her known medical diagnosis - gender dysphoria.

## WDOC Policies on Care for Prisoners with Gender Dysphoria

5.36   WDOC medical policies concerning treatment for prisoners with diagnosis of gender dysphoria, are easy to locate (if you previously know where to look for them). Also, once the FIRST AMENDED COMPLAINT - Pg. 12.

WDOC policies are located, they are not easy to understand, for those person's who are undereducated, and have not been exposed to updates from WDOC, concerning these above policies.

5.37 Due to this, there is a disconnect, and lack of harmony in treatment protocols for those who are suffering the symptoms of gender dysphoria.

5.38 WDOC "Care Review Committee," (CRC) makes medical and treatment decisions for prisoners with gender dysphoria.

5.39 Since January - August 2019, Ms. Sutton followed appropriate WDOC policy, by speaking to Doctor Davis, who then (allegedly) submitted his referral to the CRC Board, for approval for Sutton to begin her estrogen treatments - hormone therapy.

5.40 As of the filing of this amended complaint, the CRC Board has made no decision regarding Sutton's case, and this delay in treatment is causing Sutton emotional distress, extreme anxiety, insomnia, depression, and Sutton is proscribed medications for her depression.

5.41 Upon information and belief, and based on the above narrative facts, the delay in granting hormone therapy to Sutton is a violation of the Eighth Amendment to the U.S. Constitution, and has contributed in causing Sutton to be subjected to mental anguish, along with the daily possibility of physical harm.

5.42 Upon information and belief, also based on the WDOC's routine denial of hormone replacement therapy, along with WDOC's instruction to WDOC employees that such treatment will not be provided, Defendants WDOC, and members of the CRC Board,

FIRST AMENDED COMPLAINT - Pg. 13.

(names of all CRC Board members unknown at this time), have all refused to provide hormone replacement therapy to prisoners with gender dysphoria, who were determined not to be receiving such treatment before their incarceration.

5.43   This regular practice, is contrary to the Standards-of-Care, and is a violation of the Eighth Amendment rights of all Washington State prisoners, who have been diagnosed with gender dysphoria.

5.44   These actions by WDOC CRC Board, also create a de facto freeze-frame policy, with regard to prisoners with gender dysphoria coming into WDOC custody - meaning a limitation on care to the amount & type of care an individual was receiving prior to incarceration, regardless of their medical needs.

5.45   With respect to mental health care, WDOC as directed by its mental health employees, have authorized some prisoners (like Plaintiff), with a gender dysphoria diagnosis, to receive or purchase (from their individual spendable accounts), feminine makeup, or beauty products, while incarcerated.

5.46   Upon information and belief, Plaintiff (to date), has not been given adequate mental health counseling, that is therapeutic, or specific to her gender dysphoria.

5.47   Upon information and belief, the above allegations (if proven to be true & correct), constitute cruel and unusual punishment, in violation of the Eighth Amendment to the U.S. Constitution, warranting Court Ordered relief requested below.

///

///

FIRST AMENDED COMPLAINT - Pg. 14.

**Plaintiff Was Sexually Assualted While Housed at TRU**

5.48 Plaintiff has been incarcerated since 1994 (approx. 26 years), and she has been subjected to repeated incidents of sexual harassment, and abuse, while imprisoned within WDOC.

5.49 WDOC has provided little to no appropriate medical treatment/care for Ms. Sutton after this abuse, and there has also been little to no appropriate mental health care provided.

5.50 As stated above, around May-June 2018, Plaintiff arrived at MCC-TRU, from CBCC after graduating from I.T.P..

5.51 Since Ms. Sutton arrived at TRU, she had nothing but extreme difficulty with "where" TRU officials would house her and "who" they would house her with, in a two-person-cell.

5.52 Upon information and belief, it is alleged that the MCC-TRU classification system (which is utilized to assign "transgender" inmates - like Ms. Sutton - to a cell with another person), is a failed system.

5.53 It is also alleged, that Defendants did not follow or adhere to the "transgender-housing-protocols," (THP), and this has contributed to the below events unfolding.

5.54 WDOC records (under Plaintiff's name), will reveal that within the last year, Plaintiff has refused her housing assignment (twice), and due to this, she was placed in segregation infracted for this, and sanctioned/punished.

5.55 Plaintiff, was punished for refusing to live in a cell, with another man (she is not married to), a complete stranger, (who typically do not understand transgender issues), when there were more appropriate housing options available.

FIRST AMENDED COMPLAINT - Pg. 15.

5.56   With Plaintiff's detailed history within WDOC, she should not have been forced to live with a complete stranger, (a male inmate), she did not know, did not trust, or be subjected to this type of extreme stress/anxiety.

5.57   WDOC records will reveal, that Plaintiff has been a repeated victim of sexual assault & harassment, while under the custody of the department. Plaintiff, filed suit against WDOC officials in a previous incident, which took place at CBCC. See, Sutton v. State of Washington, et al., U.S. Dist. Crt. W.D. at Tacoma, CASE NO. C04-5642-RBL-JKA. See, U.S. Dist. LEXIS # 122323, and 19560. (March 2008).

5.58   After a year of Ms. Sutton being subjected to living with complete strangers (male inmates she did not trust), (with the associated threats that this posed to her), she became susceptible to manipulation by a convicted sex offender, and without knowledge of this person's past (at that time), Ms. Sutton was convinced by this person (TIEGON KIMBLER, WDOC #387930) (also an alleged transgender inmate), and out of desperation to find a more comfortable person to live with, Ms. Sutton agreed to live with KIMBLER, in a two-person-cell at TRU.

5.59   Prior to this agreed cell-move, Plaintiff had no knowledge of KIMBLER'S past, or her conviction history.

5.60   It wasn't until Plaintiff moved into the same cell with KIMBLER, that Ms. Sutton was told by KIMBLER that she had been under a previous investigation, for sexually assaulting her prior cellie (person she lived with), by the last name FALLON.

5.61   Defendants Hathaway, and Cohn, (during this time), had access to KIMBLER'S past prison behavior(s), and with this FIRST AMENDED COMPLAINT - Pg. 16.

same information, Hathaway, and Cohn should not have directed Ms. Sutton to be housed in the same cell with KIMBLER.

5.62    Upon information and belief, Defendants Hathaway, and Cohn had prior knowledge associated with KIMBLER'S previous prison behavioral history, the allegations that she had previously sexually assaulted the last person she lived with, yet Ms. Sutton was still directed to be housed with KIMBLER in a two-person-cell with little to no staff supervision.

5.63    Upon information and belief, in the month of March-April 2019, KIMBLER's previous alleged victim (inmate Ms. FALLON), was assigned to MCC-TRU, A Unit, C Wing, Cell 5-05.

5.64    With this identified housing assignment, it should not be very difficult to locate FALLON'S full name, and WDOC #.

5.65    Upon information and belief, there exists WDOC records associated with a previous PREA complaint filed by Ms. FALLON against KIMBLER.

5.66    Because of this, Ms. Sutton should have never been directed to move into the same cell with KIMBLER, due to the existence of evidence, revealing the sexual motives KIMBLER had with the prior transgender inmate (FALLON), who lived with her, in a two-person-cell.

5.67    Before Ms. Sutton was directed to be housed with KIMBLER, she was not told, or made aware of KIMBLER'S past, however, Defendants Hathaway, and Cohn had previous knowledge of KIMBLER'S past behaviors.

5.68    Defendants, should have provided Ms. Sutton with the necessary information about KIMBLER'S past behaviors, in

FIRST AMENDED COMPLAINT - Pg. 17.

order to allow Ms. Sutton to make a "fully-informed" decision. Unfortunately, this was not done, and this left Ms. Sutton vulnerable to sexual assault, by a person, known to be convicted of sexual assault.

5.69   Upon information and belief, Ms. Sutton also alleges that there exists other "previous" PREA complaints filed against KIMBLER, by inmates at MCC-TRU. These complaints were either investigated, or not investigated by WDOC officials.

5.70   Inmate KIMBLER'S entire "confinement-history," is the subject of investigation in this civil action, and will be sought throughout the discovery process.

5.71   Defendants, are hereby directed to "PRESERVE & DO NOT DISPOSE OF, OR DESTROY," these WDOC records.

## Ms. Sutton Move to KIMBLER'S Cell

5.72   In March-April of 2019, Ms. Sutton was directed to move-into the same cell with KIMBLER. The assigned cell was, MCC-TRU, B Unit, Cell 3-02.

5.73   After the move took place, it did not take long for KIMBLER to manipulate/coerce Plaintiff into performing sexual-acts on her, and with her.

5.74   These sexual assaults happened at least 40 times, and each time the rapes were taking place, Sutton did not feel strong/courageous-enough to fight back, even though Sutton told KIMBLER "NO!" Also, "I DO NOT WANT TO DO THIS!"

5.75   Plaintiff, was also intimidated into silence by KIMBLER, and this is why Sutton did not immediately report the ongoing sexual abuse.

FIRST AMENDED COMPLAINT - Pg. 18.

5.76   Upon information and belief, Sutton witnessed KIMBLER time her assaults upon Plaintiff, by waiting until the unit's security checks were completed, by waiting until the floor officer left the tier, and then KIMBLER was aware that she had (at least) an hour of time alone with Plaintiff, in the two-person-cell, with little to no supervision by WDOC staff.

5.77   Plaintiff's medical records will reveal, that during the time(s) that the sexual assaults were happening, Sutton WAS NOT PROSCRIBED ESTROGEN for her gender dysphoria.

5.78   However, KIMBLER was on high doses of estrogen. KIMBLER, had previously been approved for H.R.T., and Plaintiff was in the process of being approved for the same.

5.79   While the rapes were taking place, Ms. Sutton was being forced to ingest KIMBLER'S estrogen, via her bodily fluids.

5.79   Upon information and belief, in May of 2019, a PREA complaint was submitted to previous MCC-TRU A-Unit Counselor (Ms. Mills), who now is employed at MCC-SOU.

5.80   After Ms. Mills received this report, she contacted the MCC-TRU Shift Lt. (name not remembered).

5.81   Plaintiff, did not make/file this report. However, once Ms. Sutton was called to the Shift Lt.'s office, she did disclose/admit to being the victim of sexual assault, at the hands of inmate KIMBLER.

5.82   After Ms. Sutton was questioned by the Shift Lt., defendant Hathaway was contacted about this incident, and met with Plaintiff, in the Shift Lt.'s office.

FIRST AMENDED COMPLAINT - Pg. 19.

5.83   After defendant Hathaway listened to Sutton's detailed report, he became convinced that Sutton had in fact, been sexually assaulted by KIMBLER.

5.84   Due to the submitted PREA complaint against KIMBLER, Ms. Sutton was immediately separated from KIMBLER, and Sutton was transported to a local hospital for examination.

5.85   Defendant Hathaway, also directed Sutton to be moved away from KIMBLER'S living unit (B Unit), and to have Sutton housed in A-Unit, with another identified transgender, by the name, LOGAN LaBELLE (AKA= "Raven" LaBelle), DOC #405905.

5.86   Upon information and belief, once KIMBLER was questioned about this matter, she became belligerent, and was verbally abusive towards WDOC officials.

5.87   Due to this, KIMBLER was eventually placed into segregation, for the safety of others.

5.88   After defendant Hathaway became involved with this investigation, Hathaway reviewed the housing options for Sutton and Hathaway directed Sutton to be housed with "Raven" LaBelle, who (at that time), was housed in MCC-TRU, A-Unit, 101-1.

5.89   Relevant to paragraph #5.84 (above), Sutton was transported to PROVIDENCE INTERVENTION CENTER FOR ASSAULT & ABUSE, address: 1509 California Street, Everett, WA. 98201. Telephone: (425)-242-4800.

5.90   While Ms. Sutton was at the hospital, a rape exam was conducted upon her. Plaintiff, is currently requesting a copy of her medical records, for review.

FIRST AMENDED COMPLAINT - Pg. 20.

5.91  While Ms. Sutton was at the hospital, her blood was drawn for evaluation. These test results should be within Plaintiff's medical files, at the above hospital.

5.92  After exam, and evaluation at the hospital, Sutton was returned to MCC-TRU. Ms. Sutton, was then escorted to A-Unit.

5.93  As stated above, Ms. Sutton was housed with Ms. LaBelle, in A-Unit, Cell 101.

5.94  While being housed with Ms. LaBelle, ("Raven") became a witness to Sutton's emotional instability immediately after she suffered from the sexual assaults at the hands of KIMBLER. Ms. LaBelle, did the very best she could to provide emotional support, and psychological comfort to Ms. Sutton.

5.95  Ms. "Raven" LaBelle, may become an uncooperative material witness, due to the fact that KIMBLER has been manipulating Ms. LaBelle to turn-against Sutton, for the benefit of KIMBLER, and KIMBLER has been convincing LaBelle that Ms. Sutton filed a FALSE PREA REPORT against her, in order to discredit Sutton, and make KIMBLER appear to be innocent.

### Summary of Incidents and Aftermath of Same

5.96  Upon information and belief, Plaintiff should not have been housed with inmate KIMBLER, in a two-person-cell, with little to no direct supervision by MCC-TRU prison officials.

5.97  Upon information and belief, MCC-TRU has NO visable video-surveillance-cameras inside the TRU living unit's WING-AREAS, where the inmates actual reside/live.

5.98  Upon information and belief, Plaintiff asserts that the lack of video-surveillance-cameras inside the living units, have contributed to a culture of sexual abuse, and harassment

FIRST AMENDED COMPLAINT - Pg. 21.

within the living-units of MCC-TRU.  TRU prison officials have

taken no action to install security-recording-equipment inside

the TRU living-units, even though WDOC officials are aware of

the culture of sexual violence, and harassment that exists at

MCC-TRU.

5.99  Upon information and belief, WDOC records will

reveal that KIMBLER is well known as a "Drop-out, X-Gang-Member,"

(South-Side-Latino-Gang), she has a violent prison history,

(within WDOC), and her nickname used to be "Boxer."

5.100  KIMBLER'S incarceration history, within WDOC, will

reveal that KIIMBLER is a convicted sex-offender, was convicted

of sexual assault, and she is required to take the "Sex-Offender-

Treatment-Program," before she is released from State prison.

5.101  KIMBLER'S past, should reveal to a reasonable person

what type of individual KIMBLER is, and this same information

should have provided sufficient-enough-information for Defendants

to make appropriate housing for KIMBLER, in order to ensure that

KIMBLER IS NEVER TO BE HOUSED WITH ANOTHER PERSON, ESPECIALLY

A PREVIOUSLY KNOWN VICTIM OF PRISON RAPE, like Ms. Sutton.

5.102  Due to Defendants previous knowledge concerning

KIMBLER'S motives, and promiscuous actions, while housed at

MCC-TRU, Defendants should have never directed Ms. Sutton to be

housed in the same cell with KIMBLER.

### Ms. Sutton Met With WDOC Intelligence & Investigative Staff

5.103  WDOC normal procedures, for PREA complaints, is for

both the victim, and perpetrator to meet "separately" with WDOC

investigators. This took place shortly after the PREA complaint

was submitted to MCC-TRU officials.

FIRST AMENDED COMPLAINT - Pg. 22.

5.104  At the time that KIMBLER met with I. & I. staff, she then became aware of "WHO" had exposed her actions to WDOC, and "WHO" had INFORMED AGAINST HER/"Snitched."

5.105  With this knowledge provided to her by WDOC staff, KIMBLER had a motive to "retaliate" against Ms. Sutton.

5.106  Plaintiff has experienced "retaliation" due to a previous PREA complaint. Because of this, Ms. Sutton feared what KIMBLER may do to her, if she was allowed to return to TRU.

5.107  During Plaintiff's meeting with I. & I. officials, Ms. Sutton requested that KIMBLER be removed from TRU, due to the possibility that KIMBLER would cause "retaliation" against her, immediately after she was allowed to return to TRU.

5.108  As Plaintiff had predicted, once KIMBLER was allowed to return to TRU, she began an immediate "smear-campaign" against Ms. Sutton. KIMBLER, began manipulating/coercing the entire L.G.B.T. & Allied Community to believe that Ms. Sutton had reported a FALSE PREA COMPLAINT AGAINST HER, that she was innocent of any wrongdoing, and that Ms. Sutton was the virus in the local community, that Sutton needed to be harassed, ridiculed, and tormented by all community members.

5.109  Because of KIMBLER'S methods, motives, and her desire to see Plaintiff harmed emotionally, and psychologically, it became increasingly difficult for Ms. Sutton to adjust to her environment, immediately after she suffered the sexual assaults at the hands of KIMBLER.

5.110  It did not take long for KIMBLER to influence all community members to TURN-AGAINST-SUTTON.

FIRST AMENDED COMPLAINT - Pg. 23.

5.111   After KIMBLER was provided the opportunity, and time to turn the entire L.G.B.T.& Allied Community against Ms. Sutton, Plaintiff felt re-victimized by the same community, when they should have came to Sutton's aid, and provided both psychological, also emotional support.

5.112   As a repeated victim of sexual abuse, and harassment while Sutton has been under the custody of WDOC, Plaintiff did not expect to be victimized once again, when she decided to be transferred to MCC-TRU.

5.113   Plaintiff, did not agree to be transferred to TRU in order to endure sexual assault, or harassment.

## Damages Caused to Ms. Sutton

5.114   Upon information and belief, Ms. Sutton has been living with the symptoms of gender dysphoria, since childhood.

5.115   WDOC records will reveal, that in 2003 Ms. Sutton was diagnosed with gender dysphoria, while housed at CBCC.

5.116   Since 2003, WDOC has provided little to no adequate medical treatment for Ms. Sutton's gender dysphoria.

5.117   As stated previously, due to a lack of adequate medical treatment for Ms. Sutton's gender dysphoria, Sutton has suffered years of mental anguish, along with a strong desire to self-harm herself, via auto-castration.

5.118   To date, Ms. Sutton has feared auto-castration, (even though she desires it), because the pain will be intense.

5.119   Plaintiff, has a phobia to pain. This has prevented her from the act of auto-castration.

FIRST AMENDED COMPLAINT - Pg. 24.

5.120   Since the time of the sexual assaults (above), Plaintiff has had difficulty eating a full meal, has lost weight, she cannot sleep very well, she is suffering from the symptoms of "Rape-Trauma-Syndrome," and her mental-health is not good.

5.121   Upon information and belief, WDOC has not provided adequate medical, or mental-health treatment for Ms. Sutton, since the time of the sexual assaults.

5.122   This lack of adequate medical care/treatment by WDOC, and defendants, has caused damages to Plaintiff.

## Kimbler's Boyfriend/Lover Retaliated Against Sutton

5.123   Soon after KIMBLER was placed into segregation, and investigated for the sexual assaults against Ms. Sutton, KIMBLER'S lover/boyfriend (Joshua Smith - DOC # ?), retaliated against Ms. Sutton, by verbal threats of physical harm.

5.124   Transgender inmate Ms. Logan ("Raven") LaBelle, (DOC #405905), is a direct material witness to these verbal threats of physical harm, made by Joshua Smith towards both Ms. LaBelle, and directed towards Ms. Sutton.

5.125   Both inmates Rueben Hinton (DOC # ?), and inmate Timothy Evans (DOC # ?), were direct witnesses to KIMBLER'S boyfriend/lover making verbal threats towards Ms. Sutton.

5.126   Joshua Smith, also verbally threatened Ms. LaBelle, in the MCC-TRU recreation yard, because Mr. Smith thought that Ms. LaBelle had been apart of the PREA complaint Sutton made against KIMBLER, or that LaBelle had influenced Sutton's decision to call a PREA claim against KIMBLER.

FIRST AMENDED COMPLAINT - Pg. 25.

5.127  At the time that inmate Smith verbally threatened Ms. LaBelle (in the recreation yard), inmate Hinton was a direct witness to this unfortunate incident, because LaBelle walked over to Hinton (after being threatened by Smith), and requested that Mr. Hinton come to LaBelle's aid, by speaking to inmate Smith, with the hope that Hinton could convince Smith to leave LaBelle alone, and stop threatening her.

5.128  Due to inmate Smith's behavior directed towards Ms. LaBelle, and Ms. Sutton, a retaliation complaint was filed with the MCC-TRU, A Unit's 3rd Shift Sgt. (Mr. Cannon).

5.129  Due to consistent testimony, Sgt. Cannon shared this information with the 3rd Shift's Lt. (name unknown), and inmate Smith was escorted out of MCC-TRU, and sent to segregation.

5.130  WDOC database records will reveal the testimony from both victims of this retaliation, and the eventual outcome.

5.131  The removal of inmate Smith, happened immediately before KIMBLER was allowed to return to TRU.

5.132  Immediately after KIMBLER returned to TRU, (as stated above), she had a motive to cause retaliatory harm to Ms. Sutton, and did so, as previously stated.

5.133  KIMBLER'S retaliation, came in the form of her influence over the young transgender women at TRU. Along with her coercion, and manipulation over them, convincing them all to turn-on, BE AGAINST SUTTON, and to OSTRACIZE SUTTON.

5.134  Due to KIMBLER'S negative influence over all the other transgender women at TRU, Ms. LaBelle became convinced to also TURN-AGAINST Sutton, when Sutton & LaBelle were once close friends. Sutton, became very uncomfortable at TRU.

FIRST AMENDED COMPLAINT - Pg. 26.

## Ms. Sutton Was Recently Housed in Segregation

5.135   On or about August 28, 2019, Ms. Sutton reported
to MCC-TRU 3rd Shift Sgt. (Mr. ? Cannon), that she had heard
(from another inmate, by the name Rick Cearns, DOC # ?), that
he had overheard both KIMBLER & LaBelle speak about Plaintiff,
(in the recreation yard), revealing a conspiracy between them
both, to have Ms. Sutton removed from TRU, either through
violence, or other means.

5.136   As soon as Plaintiff heard this, she became highly
concerned for her physical safety, and reported this to Sgt.
Cannon, who then shared this information with the 3rd Shift Lt.,
(Mr. ? Woods).

5.137   With this information submitted, Lt. Woods ordered
Ms. Sutton to be placed in restraints, and escorted to segregation
for "involuntary" protection concerns.

5.138   Plaintiff was then housed in segregation for the
few months (from August - to - October, 2019), until she was
reclassified, and transferred over to the main Reformatory at
Monroe Corrections Complex.

5.139   During the investigation into the above retaliation,
it was determined that Ms. Sutton could not return to TRU, and
a "facility" keep-separation order was entered into WDOC database,
preventing Sutton from being at the same facility with LABELLE.

5.140   Upon information and belief, KIMBLER'S influence
over LABELLE seems clear, and unambiguous. It seems that LABELLE,
wants nothing more to do with Ms. Sutton. If she did, there would
be no need for a keep-separate-order of this magnitude.

FIRST AMENDED COMPLAINT - Pg. 27.

## VI.   CLAIMS  FOR  RELIEF

### Count One:

## Denial of Medically Necessary Care in Violation of the
## Eighth Amendment to the U.S. Constitution

### (As to All Defendants)

6.01   Ms. Sutton, incorporates and re-alleges herein the allegations of the foregoing paragraphs.

6.02   At all relevant times, WDOC officials were aware that Ms. Sutton has gender dysphoria, a serious medical need, that compromises an individual's physical, and mental well-being, when left untreated.

6.03   Upon information and belief, WDOC has approved other identified transgender inmates, (housed at MCC-TRU), to be treated with hormone-replacement-therapy (HRT), yet WDOC has not approved Ms. Sutton to be treated in the same manner.

6.04   WDOC officials, were aware that the medically accepted standards of treatment for gender dysphoria includes hormone therapy, individualized talk-therapy, and feminine gender expression, and that such treatments were/are medically necessary for Ms. Sutton.

6.05   WDOC officials knew that the failure to treat Ms. Sutton's gender dysphoria consistent with prevailing medical standards for treating her condition, placed Sutton at substantial risk of self-mutilation, auto-castration, and severe emotional distress. These risks persist today.

6.06   Acting with deliberate indifference, WDOC officials (while acting under color of State law), have failed to provide

FIRST AMENDED COMPLAINT - Pg. 28.

medically necessary care, to treat Ms. Sutton's gender dysphoria, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

6.07 WDOC medical officials, are personally, and directly involved, by their participation in the constitutional deprivation as alleged above/herein.

6.08 WDOC officials showed deliberate indifference to Ms. Sutton's serious medical needs by, inter alia, refusing Ms. Sutton an appropriate treatment plan, and refusing to authorize gender dysphoria treatment, in accordance with the established standards of care for treating this condition, and with no exercise of individualized medical judgment.

6.09 WDOC officials, showed deliberate indifference to Ms. Sutton's serious medical needs by, inter alia, ratifying or condoning the unconstitutional actions of their subordinates, and/or failing to take steps to prevent them from continuing to disregard prisoners' need for medically necessary treatment, while fully aware of the constitutional deprivations complained of herein.

6.10 WDOC officials, (more specifically), Care Review Committee (CRC) board members, have shown deliberate indifference to Ms. Sutton's serious medical needs by, inter alia, the encouraging, or permitting a practice of denying hormone therapy to prisoners (like Plaintiff), with gender dysphoria, in violation of medical custom, and standards.

FIRST AMENDED COMPLAINT - Pg. 29.

6.11   Each of the WDOC CRC board members, also implemented followed, enforced, and continue to enforce a policy or custom (having the force of law), or refusing ongoing requests to initiate gender dysphoria treatment(s), irrespective of Ms. Sutton's medical need(s), and providing a form of counseling, under the guise of gender dysphoria treatment, when they knew, or should have known, it was grossly inadequate care, that places Ms. Sutton at a substantial risk of mental, and physical deterioration, or harm.

6.12   As a direct & approximate result of WDOC CRC board members actions, Ms. Sutton has suffered, and continues to suffer irreparable physical injury, and emotional harm.

6.13   Ms. Sutton has suffered physical, and emotional injury, as a result of the delay/denial of medically necessary care. Ms. Sutton, has contemplated suicide, she has contemplated auto-castration, and other forms of self-harm, due to the delay, in approving/providing medically necessary treatment for her well-documented gender dysphoria.

6.14   Ms. Sutton continues to suffer severe distress, as a result of her untreated gender dysphoria. Her compulsion to think on these unhealthy matters, and her desire to do so, is causing her mental/physical health to deteriorate.

6.15   Ms. Sutton, remains without adequate medical care, or treatment for her gender dysphoria. Due to this, Sutton is faced with a substantial risk of serious harm, or other injuries.

6.16   Ms. Sutton, will continue to suffer substantial, & irreparable harm, absent immediate relief.

FIRST AMENDED COMPLAINT - Pg. 30.

## Count Two:
## Policy or Custom Regarding Treatment for Gender Dysphoria
## in Violation of the Eighth Amendment to the U.S. Constitution

### (As to all Defendants)

6.17   Ms. Sutton, incorporates and re-alleges herein, the foregoing paragraphs.

6.18   WDOC officials (who sit on the CRC Board), are final policy - and decision-makers for WDOC, and have enforced, also continue to enforce an unconstitutional medical care policy, that removes decision-making regarding the treatment of gender dysphoria from healthcare professionals, and prevents them from initiating appropriate medically necessary care.

6.19   WDOC CRC policies, and procedures relevant to Ms. Sutton's ongoing request for H.R.T., (estrogen treatments), subjects Ms. Sutton to a substantial risk a serious injury, and harm in violation of the Eighth Amendment to the U.S. Constitution.

6.20   Upon information and belief, under WDOC CRC policies, and procedures, (which have been, and continue to be implemented by WDOC officials, their agents, officials, employees, and all persons acting in concert with them, under color of State law, in their official capacities), Ms. Sutton's ongoing request for H.R.T. (estrogen medication treatments), has been repeatedly delayed without justification.

6.21   A lengthy delay in appropriate necessary medical care/treatment for gender dysphoria, is a denial of treatment, for the same, in violation of the Eighth Amendment to the U.S. Constitution, and is a form of cruel & unusual punishment.

FIRST AMENDED COMPLAINT - Pg. 31.

6.22   As a direct, and proximate cause of WDOC CRC Board members enforcement of WDOC CRC policies, and procedures, Ms. Sutton has suffered, and continues to suffer irreparable physical injury, and emotional harm. Along with, the deprivation of her constitutional rights. Ms. Sutton will continue to suffer substantial, and irreparable harm, absent immediate relief.

### Count Three:

### Ms. Sutton Was Subjected to Prison Rape, in Violation of the Deliberate Indifference Standard, Under the Eighth Amendment to the U.S. Constitution, and Defendants Failed-To-Protect Plaintiff From A Substantial Risk of Serious Harm

#### (As to All Defendants)

6.23   Ms. Sutton, incorporates and re-alleges herein, the foregoing paragraphs.

6.24   All Defendants have violated the Eighth Amendment to the U.S. Constitution, by their actions in directing Plaintiff to be housed in a two-person-cell with convicted rapist, inmate TIEGON KIMBLER (DOC #387930), which caused Ms. Sutton to be sexually assaulted.

6.25   Defendants Hathaway, and Cohn were previously made aware of KIMBLER'S past violent history, within WDOC, along with prior PREA complaints raised/filed against KIMBLER, yet both defendants directed Plaintiff (a vulnerable inmate), to be housed with KIMBLER, which caused Plaintiff to be subjected to prison rape.

6.26   Defendants Hathaway, and Cohn are thereby liable for the damages caused to Ms. Sutton, due to their actions.

FIRST AMENDED COMPLAINT - Pg. 32.

6.27  Defendants Hathaway, and Cohn are therefore liable for the damages caused to Ms. Sutton, due to their deliberate indifference to Plaintiff's physical safety. Their combined acts, evidenced a "failure-to-protect" Plaintiff, in violation of the Eighth Amendment to the U.S. Constitution.

6.28  Furthermore, defendants Hathaway, and Cohn are also liable for the ongoing damages caused by KIMBLER being allowed to return to MCC-TRU, after Plaintiff requested that KIMBLER be kept away from MCC-TRU, due to the fear of retaliation.

6.29  As stated above, after KIMBLER was allowed to return to MCC-TRU, she began a SMEAR-CAMPAIGN against Ms. Sutton, and she worked-in-concert-with other inmates at TRU, in order to turn the entire L.G.B.T. community against Sutton.

6.30  Due to this, Plaintiff was subjected to a very unhealthy prison environment. Plaintiff felt that an attack was imminent, and because of this, Ms. Sutton notified the MCC-TRU Shift Lt. Mr. ? Woods. The Shift Lt., then placed Sutton into "involuntary" segregation/isolation, pending an investigation.

6.31  Due to Defendant Hathaway, and Cohn's actions, Ms. Sutton was kept in segregation, pending a new-classification, and eventual transfer to another prison facility.

6.32  Due to Defendant Hathaway, and Cohn's actions, Ms. Sutton was uprooted from her TRU community, and sent to isolation, for protective concerns.

6.33  Plaintiff, should not have had to endure this type of mistreatment at the hands of KIMBLER, and Ms. Sutton should not have had to loose her housing at TRU, when she is the victim.

FIRST AMENDED COMPLAINT - Pg. 33.

## VII.   QUESTIONS OF LAW & FACTS DISPUTED

7.01   There are questions of law, and disputed facts, which will need to be resolved by this Court, and those are:

(A).   Why has there been a lengthy delay (essentially a refusal by WDOC CRC Board members), in treating Ms. Sutton with estrogen medications (Hormone Replacement Therapy - HRT), when Ms. Sutton qualifies for this treatment, and is suffering from the symptoms of gender dysphoria?

(B).   Has this lengthy delay, lack of HRT medications, caused Ms. Sutton to be physically, & emotionally harmed?

(C).   Has this lack of HRT medications, been in violation of the Eighth Amendment to the U.S. Constitution?

(D).   Why was Plaintiff housed with inmate KIMBLER, when defendants Hathaway, and Cohn had prior knowledge of KIMBLER'S prison history, (allegations of previous sexual assaults)?

(E).   Why was Plaintiff placed in harms way, and subjected to prison rape, when defendants Hathaway, and Cohn had prior knowledge of KIMBLER'S propensity to be sexually active at TRU?

(F).   Why was Plaintiff previously housed with numerous MALE INMATES at TRU (strangers she did not know), when she was not married to these men, and she had been a repeated victim of sexual assault, at the hands of MALE inmates?

(G).   Why was KIMBLER allowed to return to TRU, after numerous PREA reports were filed against her, and after Sutton had requested that she be kept away from TRU, for Sutton's safety?

(H).   Why was Plaintiff removed from TRU (when she was the reported victim of sexual assault)?

FIRST AMENDED COMPLAINT - Pg. 34.

7.02   Did all defendants violate the Eighth Amendment to the U.S. Constitution, by their actions stated above, and were those actions by all defendants a form of being deliberately indifferent to Plaintiff's physical health, and safety?

7.03   Were defendants responsible for the physical health and safety of Plaintiff before, during, and after the events as described above?

7.04   Did all defendants "fail-to-protect" Plaintiff from the sexual assaults she endured at the hands of inmate KIMBLER, and the retaliation that KIMBLER caused after the PREA claims were investigated?

## VIII.   REQUEST FOR RELIEF

8.01   WHEREFORE, Plaintiff "J.Lee" SUTTON respectfully requests that this Court enter judgment in her favor, against all defendants, providing the following relief:

(A).   A declaration that Defendants' delay/refusal to provide medically necessary treatment for gender dysphoria, violates the Eighth Amendment to the U.S. Constitution;

(B).   A declaration that WDOC's medical, and mental health policies/procedures, as applied to prisoners with gender dysphoria violates the Eighth Amendment to the U.S. Constitution;

(C).   A preliminary, and permanent injunction, directing all Defendants to provide Plaintiff medically necessary treatment for her gender dysphoria, in accordance with established medical standards of care, including, but not limited to, hormone therapy therapeutic individual counseling, therapeutic transgender group support, surgery, and permitting Plaintiff to express her

FIRST AMENDED COMPLAINT - Pg. 35.

feminine gender identity, through grooming, pronoun use, & dress;

(D).  A permanent injunction, requiring Defendants to train WDOC personnel to respect, and meet the medical needs of all "identified" transgender prisoners;

(E).  Compensatory damages against each Defendant named in his/her individual capacity, in an amount adequate to compensate Plaintiff for her harms, and losses, including but not limited to Plaintiff's physical injuries, mental & emotional injuries, pain & suffering, personal humiliation, and costs incurred by Ms. Sutton;

(F).  Punitive damages against each Defendant named in in his/her individual capacity, in an amount to be determined at a future jury trial;

(G).  Reasonable attorney's fees, and costs including expert fees, under Title 42 U.S.C. § 1988; and

(H).  A Court Order granting Plaintiff the appointment of counsel, to assist in the prosecution of this case, due to the sensitive nature of this case, and all the complex medical issues involved;

(I).  Such other relief, as this Court deems just and proper.

## IX.  CONCLUSION

9.01  For all the foregoing reasons, with the facts in support, Plaintiff moves this Court to have her AMENDED complaint filed, and served upon all defendants, so that they may answer it.

It is so prayed.

DATED this __27th__ day
of __Nov.__, 2019.

JASON LEE SUTTON
(aka= "Jennifer Lee" SUTTON)
Pro se Plaintiff

FIRST AMENDED COMPLAINT - Pg. 36.

## X.   VERIFICATION

10.01   Plaintiff verifies that this complaint, with its facts in support, are true & correct, to the best of Plaintiff's knowledge, that this complaint is filed in good faith, and that this complaint was not filed for malicious motives, and is not filed with the intent to waste this Court's time/resources.

10.02   Plaintiff remains available to provide her testimony (when appropriate), and has already filed her declaration in support of her initial complaint. See, ECF NO. 05.

10.03   Plaintiff swears under the penalty for perjury, under the laws of the United States of America, that the foregoing AMENDED complaint, is true and correct.

EXECUTED on this __27th__ day of __Nov__ ,2019.

cc: Plaintiff
    Court Clerk
    Defendants.

JASON LEE SUTTON
(aka= "Jennifer Lee" SUTTON)
Pro se Plaintiff
DOC NO. 730954
W.S.R. - A Unit, 31B
MONROE CORR. COMPLEX
P.O. BOX # 777,
MONROE, WA. 98272.

FIRST AMENDED COMPLAINT - Pg. 37.

## XI.  CERTIFICATE OF SERVICE

The undersigned party declares that on the below date, she caused to be served, via the CM/ECF System, a copy of the foregoing AMENDED COMPLAINT to be handed-over to a WDOC official, for email processing, to be emailed to:

> Clerk, U.S. District Court,
> Western District of WA., at Seattle,
> Email: ECF@wawd.uscourts.gov

(Also) TO: Defense counsel of record:
> A.A.G., Ms. KATHERINE J. FABER,
> WSBA # 47926,
> Email: Katie.Faber@atg.wa.gov

The undersigned party declares under the penalty for perjury, under the laws of the United States of America, that the foregoing is true & correct.

DATED this  27th  day of  Nov. , 2019.

cc: Plaintiff
    Court Clerk
    Defendants.

JASON LEE SUTTON
(aka= "Jennifer Lee" SUTTON)
Pro se Plaintiff
DOC NO. 730954
W.S.R. - A Unit, 318
MONROE CORR. COMPLEX
P.O. BOX # 777,
MONROE, WA. 98272.

FIRST AMENDED COMPLAINT - Pg. 38.